## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JANEAN VICKMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No.    CIV-12-10-M** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits (DIB) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (TR. ___). The parties have briefed their positions, and the matter is now at issue.  For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings.

## PROCEDURAL HISTORY

Plaintiff filed her application for DIB on June 22, 2009 alleging a disability beginning January 2, 2007 (TR. 14). The application was denied on initial consideration and on reconsideration at the administrative level (TR. 14). Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on October 4, 2010 (TR. 29-49). At the hearing

Plaintiff was represented by an attorney (TR. 14). Plaintiff testified in support of her application (TR. 31-43). A vocational expert (VE) testified at the request of the ALJ (TR. 43-49). The ALJ issued his decision on February 25, 2011 finding that Plaintiff was not entitled to DIB (TR. 14-22). The Appeals Council denied the Plaintiff's request for review on November 4, 2011, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 1-3).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the

Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since January 2, 2007, her alleged onset date (TR. 16). At step two, the ALJ concluded that Plaintiff had the following severe impairments: lumbar disc disease with myelopathy; sciatica; fibromyalgia syndrome; chronic pain syndrome, and "adjustment disorder with anxiety and depression vs. depressive disorder nos and anxiety disorder nos" (TR. 16).  At step three, the ALJ determined that the Plaintiff did not have any impairment or combination of impairments which meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 12). At step four, the ALJ first formulated Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform semi-skilled, light or sedentary work as defined in 20 CFR 404.1567(a) and (b) except that requiring standing more than 2 hours at time and 4 hours total in 8 hour work-day, sitting more than 6 to 8 hour [sic] in an 8 hour day; more than frequent repetitive use of upper extremities; more than frequent repetitive use of her lower extremities; more than occasional climbing ramps/stairs, stooping, bending, kneeling, or crouching; any climbing of ladders, ropes, or scaffolds; any crawling; occasional exposure to vibrations;[1] any exposure to work hazards such as unprotected heights or dangerous machinery and equipment; any exposure to extreme heat or cold, and more than routine/ordinary

---

[1] The ALJ's wording of the RFC does not make clear whether the ALJ determined that Plaintiff can tolerate "occasional exposure to vibrations" or whether she must avoid jobs where she would be subjected to even "occasional exposure to vibrations."  A clearly stated RFC formulation would aid this Court's review.

> interactions (less than constant/detailed) with co-workers and
> the general public

(TR. 17). The ALJ then determined that Plaintiff could not perform her past relevant work (PRW) as "waitress/bar tender" (TR. 20). At step five, the ALJ considered whether the Medical-Vocational Guidelines[2] directed a finding of "disabled" or "not disabled," but he correctly concluded that the restrictions noted in the RFC precluded Plaintiff from being able to perform the full range of sedentary work. The ALJ stated that he was using the Medical-Vocational Guidelines as a "framework" for determining whether Plaintiff was disabled. Nevertheless, the ALJ then determined that "the claimant's additional restrictions and limitations have little or no effect on the occupational base of unskilled sedentary work" (TR. 21). Accordingly, the ALJ stated that "[a] finding of 'not disabled' is therefore appropriate under the framework of the above listed rules" (TR. 21).

## ISSUES PRESENTED

Plaintiff challenges the Commissioner's unfavorable decision, alleging that the ALJ erred in failing to properly weigh the opinion of her treating physician. Plaintiff further challenges the ALJ's credibility assessment regarding the severity of Plaintiff's reported symptoms and pain. Finally, Plaintiff contends that the ALJ erred at step five in concluding, without the testimony of the vocational expert or any other evidence, that Plaintiff's impairments did not significantly erode the sedentary occupational base and that, therefore, Plaintiff was not disabled.

---

[2] The Medical-Vocational Guidelines, also known as "the grids," are set out at 20 C.F.R. pt. 404, subpt. P, app. 2.

**ANALYSIS**

**I.      Weight Afforded Medical Source Opinion**

Plaintiff has a long, well-documented history of pain from fibromyalgia, chronic pain syndrome, lumbar disc disease and sciatica.  The ALJ found these conditions to be severe at step two of the sequential evaluation (TR. 16).

Since August 9, 2006, Plaintiff has been treated for chronic pain by Dr. Bruce Mackey, a pain management specialist.  Dr. Mackey's diagnosis of fibromyalgia was based on the fact that Plaintiff experienced pain on digital palpitation at all 18 of the tender point sites associated with fibromyalgia (TR. 445). In a July 28, 2009 medical opinion, Dr. Mackey stated that Plaintiff "requires high doses of pain medications on a daily basis" (TR. 490). Dr. Mackey expressed his opinion that Plaintiff's condition is chronic and will not improve (TR. 490).   Additionally, Dr. Mackey stated that Plaintiff would likely miss more than three to four work days per month because of her severe pain:

> Ms. Vickman has constant severe pain in her shoulders, shoulder blades, and thoracic spine with pain radiating to both arms, including her wrists and hands, which limits her ability for repetitive movements of her head, arms and hands, or reaching, and pushing or pulling objects 10 pounds or greater. Ms. Vickman has constant myofascial pain, and intractable neuropathic pain in her lumbar, which radiates to her hips and bilateral lower extremities, including her knees, ankles, and feet. Her ability to use her hands, fingers, and arms will also be affected by her inability to sit for long periods. She will be unable to sit or stand more than two hours total in a day

(TR. 490). Dr. Mackey completed a Physical Residual Functional Capacity Questionnaire which reflected the limitations included in his medical opinion (TR. 491-496).  Dr. Mackey's diagnosis of fibromyalgia is supported by the reported findings of Dr. Alain Le, a

consultative physician who also reported that Plaintiff experienced pain at all eighteen tender points associated with fibromyalgia (TR. 453). The ALJ contends that Dr. Mackey's assessment of Plaintiff's pain is not well supported by his own contemporaneous medical treatment notes. To the contrary, Dr. Mackey's treatment notes demonstrate that Plaintiff was consistently prescribed numerous pain medications, including opiates, in an effort to lessen Plaintiff's chronic pain (TR. 351-444).

Plaintiff contends that the ALJ erred in failing to identify what weight, if any, he was assigning to Dr. Mackey's treating physician opinion. Plaintiff is correct. This point is dispositive and requires reversal and remand of the Commissioner's final decision.

The Tenth Circuit Court of Appeals has long recognized the proper analysis and assignment of weight to be given to the opinions of treating and non-treating sources. When considering the opinion of a treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The opinion of a treating physician must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. § 404.1527(d)(2)). If the opinion is deficient in either of these respects, it should not be given controlling weight. In this case, the ALJ did not discuss the reasons for the implied refusal to afford Dr. Mackey's opinion controlling weight.

Moreover, even if the opinion of a treating physician is not entitled to controlling weight, it is still entitled to deference, and the ALJ must clearly state the weight the

6

opinion is being given, even if it is wholly rejected. The ALJ must specify the reasons for the weight afforded the opinion, and his reasons must be closely tied to the factors specified in the regulations. *See Watkins*, 350 F.3d at 1300–01.  Remand is required only if the ALJ does not adequately support the weight he assigned to the opinion of an acceptable medical source. As the relevant ruling explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p, 1996 WL 374188, at *4.  In sum, the fact that a treating physician's opinion is not given controlling weight does not resolve the second, distinct inquiry. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this basis").  This second inquiry is governed by its own set of factors:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to

the ALJ's attention which tend to support or contradict the opinion. *See Id.* at 1119 (quotation omitted). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight she gave to the treating source's medical opinion and the reason for that weight." *Id.* (quotation omitted).

In this case, the ALJ stated that he "does not find the said assessment/opinion to be well-supported by [the] treating pain management specialist's own contemporaneous medical treatment notes and other medically acceptable clinical and laboratory diagnostic techniques in the hearing record" is not sufficient to support the ALJ's rejection of the opinion of the treating pain management specialist, Dr. Mackey. As Plaintiff points out, the ALJ did not discuss why Dr. Mackey's opinion was not given controlling weight, nor did he state what weight, if any he was affording Dr. Mackey's opinion. This error alone requires remand. On remand the Commissioner should apply the regulations governing the analysis of the opinions of treating physicians.

## II.    The ALJ's Credibility Analysis

Plaintiff also challenges the ALJ's credibility assessment. In *Wilson v. Astrue*, the Tenth Circuit Court of Appeals restated the familiar framework for the proper analysis of a claimant's evidence of pain or other symptoms, as first set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). First an ALJ must consider whether the claimant has established the existence of a pain-producing impairment by objective medical evidence. If so, then the ALJ must determine whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations of pain. The ALJ must then consider all the objective and subjective evidence to determine whether the claimant's

pain is, in fact, disabling. *See Wilson v. Astrue*, 602 F.3d at 1144 (quotation and citations omitted). With regard to a claimant's credibility, an ALJ should consider:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence

*Id.* at 1145 (quotations and citations omitted).  An adverse credibility determination must be (1) "closely and affirmatively linked" to the evidence, and (2) based on evidence that is "substantial." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).

In rejecting Plaintiff's reportedly disabling pain, the ALJ relied on an MRI scan of Plaintiff's cervical spine from April 2005, "that showed only mild degenerative changes with no evidence disc protusions [sic] or spinal stenosis" (TR. 19). But as to pain attributed to fibromyalgia, numerous courts, including the Tenth Circuit Court of Appeals, have recognized that an MRI cannot prove or disprove the existence of fibromyalgia. *See Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) (complaints of severe pain that do not readily lend themselves to analysis by objective medical tests are notoriously difficult to diagnose and treat, and the diagnoses themselves are often overlapping); *see also Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n. 5 (1st Cir. 2003) ("While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis."); *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998) ("[N]o one questions that fibromyalgia is very difficult to diagnose, that no

objective medical tests reveal its presence, and that it can be completely disabling."); and *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[F]ibromyalgia [is] also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features.").

In addition to the essentially normal MRI, the ALJ also relied on the amount of Plaintiff's earnings to discredit Plaintiff's allegations of disabling pain. In fact, the ALJ's only questions to the VE during the administrative hearing concerned the amount of money Plaintiff had earned, even though she had not had enough earnings to constitute substantial gainful employment.  Plaintiff testified that she worked only two or three hours a day as a waitress. The VE testified that half of Plaintiff's earnings were attributable to tips (TR. 46).  Nevertheless, the ALJ reasoned that Plaintiff must have worked more than two or three hours a day based on her reported income (TR. 20).  The ALJ simply refused to consider the amount of earnings attributable to tips rather than to wages. Therefore, the ALJ's assertion that Plaintiff's testimony was not credible is fallacious and does not support his credibility findings.  On remand, the Commissioner should consider Plaintiff's credibility using the factors set forth in the regulations.

### III.   The ALJ's Step Five Findings

The ALJ found at step five that Plaintiff could perform light and sedentary work. His decision was not based on the testimony of the VE, however, because the ALJ did not pose hypothetical questions to the VE, and he did not ask the VE to identify specific jobs that a hypothetical person with Plaintiff's impairments could perform.

The only such question asked during the hearing was posed by Plaintiff's attorney (TR. 47). The attorney based his question on the limitations identified by Dr. Mackey in his medical opinion (TR. 446-451). The VE testified that a person with the identified limitations could not perform any kind of full time employment (TR. 47).

The ALJ concluded, however, that the limitations he, himself had identified in the RFC would "have little or no effect on the occupational base of unskilled sedentary work" (TR. 21). The ALJ's step five conclusion is not based on any evidence in the record. The ALJ erred in failing to seek the opinion of the VE as to whether there would be a significant number of sedentary jobs that a person with Plaintiff's limitations could perform. On remand, the Commissioner should rely on the testimony of a VE to identify jobs existing in significant numbers in the national or local economies that a person with Plaintiff's impairments could perform. *See Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) ("The ALJ should have called a vocational expert to determine what limitations [the claimant's] acknowledged back and leg pain might impose on her capacity to do sedentary work.").

### RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is not supported by substantial evidence and should be **REVERSED AND REMANDED** for further administrative proceedings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **December 31, 2012**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on December 12, 2012.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE